FILED

1  **LAW OFFICES OF RONALD A. MARRON, APLC**
   RONALD A. MARRON (SBN 175650)
2  *ron@consumersadvocates.com*
   SKYE RESENDES (SBN 278511)
3  *skye@consumersadvocates.com*
   ALEXIS WOOD (SBN 270200)
4  *alexis@consumersadvocates.com*
   651 Arroyo Drive
5  San Diego, California 92103
   Telephone:(619) 696-9006
6  Facsimile: (619) 564-6665

2013 AUG 15  PM 1: 02

LAW

7  ***Attorneys for Plaintiff and the Proposed Class***

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  COREY BUHS, on behalf of himself, | Case No.: CV13- 05993  SJO (MRWx) |
| 11  all others similarly situated and the | <u>CLASS ACTION</u> |
| 12  general public, | **COMPLAINT FOR:** |
| 13             Plaintiff, | **1. VIOLATION OF CALIFORNIA** |
| 14  v. | **CONSUMERS LEGAL REMEDIES ACT [CIV. CODE §§ 1750, *et seq.*]** |
| 15  PH BEAUTY LABS, INC., a California | **2. VIOLATION OF CALIFORNIA** |
| 16  corporation, individually and d/b/a Freeman Beauty Labs; FREEMAN | **UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200, *et seq.*]** |
| 17  BEAUTY LABS, a California corporation, | |
| 18 | **3. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW [BUS & PROF. CODE §§ 17500, *et seq*]** |
| 19             Defendants. | |
| 20 | **4. BREACH OF EXPRESS WARRANTY** |
| 21 | **5. BREACH OF IMPLIED WARARANTY OF MERCHANTABILITY** |
| 22 | |
| 23 | **6. VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT [15 U.S.C. §§ 2301, *et seq.*]** |
| 24 | |
| 25 | |
| 26 | **7. VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT [815 Ill. Comp. Stat. 502/2, *et seq.*]** |
| 27 | |
| 28 | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, on behalf of himself, all others similarly situated, and the general public ("Plaintiff"), alleges against Defendant pH Beauty Labs and Freeman Beauty Labs ("Defendants") the following upon his own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of his counsel:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action where Plaintiff, a member of the class, is from a different state than Defendant.  On information and belief, more than two-thirds of the members of the class are citizens of a state different from the Defendant. This Court also has original jurisdiction over the federal claim under the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.     Personal jurisdiction is derived from the fact that the Defendants maintain their headquarters in, and conduct business within, the State of California and within this judicial district.

3.     Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendants:

(i)     is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

(ii)    does substantial business in this district;

(iii)   advertises to consumers residing in this district; and,

1

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

(iv)   is subject to personal jurisdiction in this district.

## THE PARTIES

4.     At all times relevant to this matter, Plaintiff Corey Buhs was a resident and citizen of the state of Illinois.

5.     On information and belief, at all times relevant to this matter, Defendant pH Beauty Labs, Inc. ("pH Beauty") was a California corporation that maintains its principal place of business and corporate headquarters in Los Angeles, California, where it is registered with the California Secretary of State. pH Beauty does business in California, Illinois and throughout the United States individually and under the name of its wholly-owned subsidary, Freeman Beauty Labs, a limited liability corporation.

6.     On information and belief, at all times relevant to this matter, Defendant Freeman Beauty Labs was a California corporation that maintains its principal place of business and corporate headquarters in Los Angeles, California.

7.     Members of the putative class are reside in and are citizens of Illinois, California and throughout the United States.

8.     Defendants are manufacturers, distributors and sellers of cosmetic and skin care products.

9.     Defendants produce, market, and sell cosmetic and skin care products, such as the Eclos "Apple Stem Cell" products described herein, throughout the United States, including California and Illinois.

10.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned the Defendants and Defendants' employees were the agents, servants and employees of the Defendant, acting within the purpose and scope of that agency and employment.

11.     In addition to selling its Products on the shelf in major retail stores, such as Walgreens and RiteAid, Defendants sells their Products directly to

2

consumers online via their website, freemanbeauty.com, and product specific websites such as target.com.  Defendants also distribute their Products to online third party retailers for sale directly to consumers through online transactions, such as sales through vendors on amazon.com.

## BACKGROUND FACTS

### The Legacy Eclos and Current Eclos Product Packaging

12.     Eclos products have been sold by Defendants and by Defendants' predecessors-in-interest in major retail outlets such as RiteAid, Walgreens and Target, as well as online via the Internet.

13.     Packages of the Legacy Eclos products all carry large-type bold labeling reading "Contains High Potency Plant Stem Cells" followed by "A Swiss Phyto Extract" in smaller, lighter-colored type.  The product tubes or bottles found inside are simply printed with "Plant Stem Cells, A Swiss Phyto Extract," while the fine print of the ingredients printed on the packaging indicates that the Eclos Products contain "Malus Domestica Fruit Cell Culture (Plant Stem Cell)".[1]

14.     The initial line of Eclos skin care and cosmetic products ("Legacy Eclos Products") was as follows, all of which were, and continue to be, sold in packages claiming they are "Anti-Aging" and that they contain "High Potency Plant Stem Cells" by means of prominent bold display type on the external point-of-sale packaging: [2]

- Facial Cleanser Skin Prep
- Cellular Activator Face Serum
- Moisture Therapy Regenerative Cream
- Restorative Eye Cream

---

[1] *See* Exhibit 4.

[2] *See, e.g.,* Exhibit 2.

3

- Instant Radiance Facial Scrub
- Skin Renewal Clay Mask
- Travel/Starter Kit
- Super Concentrated Night Booster Fluid
- Intensive Skin Restoration Body Cream
- Intense Moisture Hydrating Mask
- Dark Circle & Puffy Eye Cream
- Wrinkled Forehead & Crow's Feet Cream
- Age Spot Treatment

15.     At some point, the Legacy Eclos Product line, which had been manufactured for and marketed by Delicious Brands, a Texas limited liability corporation (Exhibit 1, second image), was acquired by Defendants.  Defendants conduct business as "Freeman Beauty Labs" or "Freeman Beauty," selling cosmetics, including Eclos products, on the Freeman Beauty website, on third-party websites, as well as in retail outlets such as Walgreens and Rite Aid drug stores.

16.     More recently, Defendants reduced the number of Eclos products that it manufactures and distributes, while continuing to do business as Freeman Beauty.  Most of the remaining products were renamed, and Defendants introduced a new package design.   In addition to continuing to distribute and market its remaining inventory of Legacy Eclos Products, Defendants now manufacture and market at least eight Eclos products ("Current Eclos Products[3]"):

- Anti-Aging Starter Kit
- Cellular Activator Face Serum

---

[3] Some of the Current Eclos Products are also sold online at http://www.target.com. (Visited July 24, 2013.)

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

- Daily HydraPrimer SPF 30
- Instant Radiance Facial Scrub
- Moisture Therapy Regenerative Cream
- Restorative Eye Cream
- Skin Prep Cleanser
- Skin Renewal Clay Mask

17.    The Current Eclos Products are now labeled with both the Freeman and the Eclos logos, and are labeled "Apple Stem Cell Skin Care."[4]   The ingredients listed on the Current Eclos Products include "Malus Domestica Fruit Cell Culture Extract."

18.    Various printed statements appearing on the packaging of the Legacy Eclos and Current Eclos Products are summarized in Table A (Misrepresentation Table).

19.    The Legacy Eclos Products and the Current Eclos Products also bear prominent circular seals, printed in red ink, that make additional claims.[5]   The Legacy Eclos Products bear red seals stating either "Clinically Proven Results, Advanced Targeted Solutions, Clinically Proven Results" ("Version A," *see* Ex. 1) or "Clinical Results, 100% of Subjects Experienced Visible Decrease in Wrinkle Depth" ("Version B," *see* Exs. 2 & 3).   The Current Eclos Products display red seals stating that "Apple Stem Cells Are Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks." *See*

---

[4] Recently, the latest packaging for Defendants' SPF Daily Hydra Primer SPF 30 product has replaced "Apple Stem Cell Skin Care" with "Apple Stem Cell Beauty."  *See* Exhibit 6.

[5] As of this filing, on the latest packaging for Defendants' SPF Daily Hydra Primer SPF 30 product, Defendant has replaced the red seal seen at the center or upper right-hand corner of the Current Eclos Products with similarly-worded bold green lettering printed near the bottom of the point-of-sale packaging and the product container.  The latest wording of this claim is is: "Clinically Proven to Visibly REPAIR and RENEW Skin in Two Weeks."  *See* Table A and Exhibit 6.

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

Table A and Ex. 5.  All of the advertising representations essentially convey the same message of scientific clinical proof of efficacy to reduce signs of aging.

<u>**TABLE A**</u>
<u>Misrepresentations Appearing on the Packaging of</u>
<u>the Legacy Eclos and the Current Eclos Products</u>

| Location of statement | Product | Content |
| --- | --- | --- |
| Red Circular Seal, Front of Package | Legacy Eclos (Version A[6]) | "Clinically Proven Results, Advanced Targeted Solutions, Clinically Proven Results" |
| | Legacy Eclos (Version B[7]) | "Clinical Results, 100% of Subjects Experienced Visible Decrease in Wrinkle Depth" |
| | Current Eclos[8] | "Apple Stems[*sic*] Cells Are Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks" |
| Green bold print, lower left of packages and | Current Eclos, recent packaging of SPF Daily | "Clinically Proven to Visibly REPAIR and RENEW Skin in Two Weeks" |

---

[6] *See* Ex. 1.

[7] *See* Exs. 2 & 3.

[8] *See* Ex.5.

6

| Location of statement | Product | Content |
|---|---|---|
| product containers. | Hydra Primer SPF 30[9]. | |
| | | |
| Front of Package | Legacy Eclos (Version A) | "Contains High Potency Plant Stem Cells …A Swiss Phyto Extract" |
| | Legacy Eclos (Version B) | |
| | Current Eclos | "Apple Stem Cell Skin Care" |
| | Current Eclos, recent packaging of SPF Daily Hydra Primer SPF 30. | "Apple Stem Cell Beauty" |
| Ingredients Panel | Legacy Eclos | "Malus Domestica Fruit Cell Culture (Plant Stem Cell)" |
| | Current Eclos | "Malus Domestica Fruit Cell Culture Extract" |
| | | |
| Front of Package & Front of Product Containers | Current and Legacy Eclos Products | "ANTI-AGING" |

---

[9] *See* Ex. 6.

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

20.   Defendants' advertising claims seek to leverage intensive media attention regarding numerous "hot-button" issues surrounding human embryonic stem cell research, which has created widespread awareness amongst members of the general public that stem cell therapies are powerful modern "cutting edge" medical procedures.[10]   Therapeutic usage of mammalian stem cells, and human embryonic stem cells in particular, have been the subject of intensive scientific research.[11]

21.   In contrast, Defendants' claims notwithstanding, apple stems cells are not the subject of any legitimate peer-reviewed research reported in recognized scientific journals.[12]   There are no specific references to be found on the exterior of any packages that might support defendants' claims regarding "clinical studies." The Freeman Beauty website does assert, vaguely, that "[c]linical research proves 100% of women reported visible skin rejuvenation via a reduction in wrinkles and improved skin texture over a 2 week period when using Eclos™ anti-aging skin care, formulated with Apple Stem Cell Technology."[13]   Additional claims of clinical research are found elsewhere on the Freeman Beauty website, such as

---

[10] See, e.g. A. Pollock, "Cloning Is Used to Create Embryonic Stem Cells," *New York Times,* May 15, 2013, www.nytimes.com/2013/05/16/science/scientists-use-cloning-to-create-embryonic-stem-cells.html.

[11] See, *e.g.,* H.S. Bernstein, "Cardiac Repair And Restoration Using Human Embryonic Stem Cells," *Regenerative Medicine* 7, 697-712 (September 2012); O. Yabut, and H.S.Bernstein, "The Promise Of Human Embryonic Stem Cells In Aging-Associated Diseases," *Aging (Albany, N.Y.)* 3, 494-508 (May 2011).

[12] A search of the National Center for Biotechnology Information ("NCBI") PUBMED online database of scientific journal articles [maintained by US National Library of Medicine and the National Institutes of Health ("NIH")] for the phrase "apple stem cells" yielded no results. Search performed July 23, 2013 at http://www.ncbi.nlm.nih.gov/.

[13] *See*, *e.g.,* www.freemanbeauty.com/product/restorative-eye-cream — "Ingredients" tab.  (last visisted July 23, 2013.)

---

8

"*100% of 20 participants in a clinical study on Apple Stem cells experienced a decrease in wrinkle appearance and improved skin texture within 2 weeks."[14]

22.    The package insert of the Legacy Eclos Products proclaim "New Hope for Aging Skin" arising from the "tremendous ability" of "Plant Stem Cells extracted from a rare Swiss apple, (Uttwiler Spätlauber)" to stimulate human stem cells in human skin.[15] Moreover, the side panels of the exterior of the cartons containing the Legacy Eclos Products displays these same claims regarding the "tremendous" powers of "Plant Stem Cells" obtained from the "Uttwiler Spätlauber" apple.[16]

23.    The Legacy Eclos Products package insert goes on to headline "Clinically Proven Results" with figures showing "skin before" and "skin after" 28 days, and stating, without reference to any publication, that "100% of the women saw a reduction in wrinkle appearance within 2 weeks."  The so-called "clinical research" appears to be derived from some unknown source, also described without attribution on the website of another purveyor of a "Swiss Apple Wrinkle Remedy," which describes a 28-day uncontrolled "clinical study" of "20 volunteers aged from 37 to 64" which "showed a … visible decrease in wrinkle depth for 100% of the subjects."[17]

24.    Defendants' alleged "clinical studies" may be ultimately derived from certain papers claiming to isolate and study stem cells or various extracts from stem cells of the Uttwiler Spätlauber apple, a "cultivar" or "strain" of the common apple, *Malus domestica,* which is the Latin name printed in the ingredients panels

---

[14] *See* http://www.freemanbeauty.com/klouteclos. (Visited July 29, 2013.)

[15]*See* Ex. 1, third image.

[16] *See* Ex. 1, second image, and Ex. 2.

[17] See http://www.lather.com/swissapple/.  (Visited July 20, 2013.)

9

of the Legacy Eclos and the Current Eclos Products.[18]  The source of such research appears to lie in reports published by the German journal, SOFW, English translations of which may be found online by searching its website.[19]   SOFW is not a peer-reviewed journal; its sole purpose is to promote the formulation and sale of cosmetic treatments, and the research studies it publishes are typically performed by employees of companies that promote and sell various cosmetic products using the cells or cell extracts that are under review.

25.   In the case of "Apple Stem Cell" products, the claimed "research" appears to ultimately originate from Mibelle Biochemistry ("Mibelle"), a European purveyor of a "liposomal extract" of "de-differentiated apple callus cells," that Mibelle markets as PhytoCelTech™ Malus Domestica.[20]  Employees of Mibelle appear to be responsible for most or all of the so-called "research papers" regarding the purported "anti-aging" properties of "plant stem cells" and "stem cell extracts."

## DEFENDANTS' MISREPRESENTATIONS REGARDING STEM CELLS
### Statements that Defendants' products "contain stem cells" are false.

26.   <u>The Current Eclos Products.</u>   The Eclos Products' packaging uniformly proclaims that that each product "Contains High Potency Plant Stem Cells."  Further, their ingredient panels state that each product contains "Malus Domestica Fruit Cell Culture (Plant Stem Cell)."  *See* Table A.  This is patently false; stem cell culture is a delicate process requiring temperature-controlled

---

[18] See Table A.

[19] http://www.sofw.com/index/sofw_en/Search.html. (Visited July 20, 2013.)

[20] *See* http://www.mibellebiochemistry.com/pdfs/Plant_Stem_Cell_Extract_for_Longevity_of_Skin_and_Hair_SFW_05_08.pdf. (Viewed July 27, 2013.)

10

incubators and a constant supply of growth factors presented to the cells in specially-formulated sterile media. Stem cells die quickly after removal from such controlled conditions. After cell death, the cells are quickly broken down by enzymatic, chemical and bacterial means. To assert that any cosmetic product could contain anything resembling a stem cell after undergoing manufacture via combination with dozens of additional herbal and chemical components is a patently absurd falsehood that seeks to prey upon the average consumer's ignorance of modern cell biology.

27.    <u>The Current Eclos Products.</u>   The Current Eclos Products have ingredient panels stating the actual purported active apple-derived substance as "Malus Domestica Fruit Cell Culture Extract." This ingredient language avoids claiming actual stem cell content in the ingredients, but Defendants go on and place the tagline "Apple Stem Cell Skin Care" conspicuously presented beneath the "Eclos" logo on the front of all packages, as well as the wording "Apple Stems[*sic*] Cells Are Clinically Proven" prominently displayed in the red circular seal. *See* Table A. These claims strongly suggest to the average consumer that the Current Eclos Products do contain apple stem cells, and are therefore false and misleading as well.

28.    The Products also claim: "Clinical research proves 100% of women reported visible skin rejuvenation via a reduction in wrinkles and improved skin texture over a 2 week period when using Eclos™ anti-aging skin care, formulated with Apple Stem Cell Technology;" and "Eclos™ is paraben-free, sulfate-free, free of synthetic fragrances, synthetic dyes, mineral oil and petroleum," both of which are false and deceptive.

**<u>Statements that apple stem cell extracts are "clinically proven" are false.</u>**

29.    The packaging of both the Legacy Eclos Products and the Current Eclos Products explicitly state, by means the prominent red circular seal, that

11

Defendants' products are "clinically proven." *See* Table A.   In addition, package inserts within the cartons, readily accessible by consumers before and after purchase, detail supposedly "clinically proven results."[21]   These statements are false, inasmuch as any purported "clinical proofs" of efficacy of the products are based on severely-flawed uncontrolled experiments using tiny sample sizes, performed by employees of cosmetic companies and published, if at all, without peer review.

## FACTS

30.   This is a consumer protection class action lawsuit on behalf of purchasers of Defendants' Current Eclos Products and Legacy Eclos Products (collectively, the "Products" or "Eclos Products").

31.   Defendant manufactures, advertises, distributes and sell the Products in OTC aisles in major retail stores throughout California.

32.   Defendants primarily advertise and promote the Products through uniform labeling claims on the front of the Products' package.  Label descriptions on the Products' packaging, taken as a whole, represent there are various uses, benefits and characteristics to the Products.  *See* Exs. 1 - 6 (Photographs of Packaging).

33.   Defendants' Products are also the subject of an extensive and comprehensive advertising and marketing campaign in various media including the Internet.    *See,    e.g.,*    http://www.freemanbeauty.com/klouteclos; http://www.freemanbeauty.com/eclos.

34.   Defendants' Legacy Eclos Products were produced in at least eleven (11) varieties: Facial Cleanser Skin Prep, Cellular Activator Face Serum, Moisture Therapy Regenerative Cream, Restorative Eye Cream, Instant Radiance Facial

---

[21] *See* Ex. 1, third image.

Scrub, Skin Renewal Clay Mask, Super Concentrated Night Booster Fluid, Intensive Skin Restoration Body Cream, Intense Moisture Hydrating Mask, Dark Circle & Puffy Eye Cream, Wrinkled Forehead & Crow's Feet Cream and Age Spot Treatment.

35.    During the Class Period and continuing thereafter, Plaintiff was exposed to and saw Defendants' claims about the Legacy Eclos Products and the Current Eclos Products ("Products"), which claimed, *inter alia*, that the Products were effective remedies for wrinkles and other dermatological symptoms of aging. Plaintiff is a consumer as described herein.

36.    Defendants market a Travel/Starter Kit, which was purchased by Plaintiff Corey Buhs, that contains six varieties of the above Legacy Eclos Products, *i.e.,* Facial Cleanser Skin Prep, Cellular Activator Face Serum, Moisture Therapy Regenerative Cream, Restorative Eye Cream, Instant Radiance Facial Scrub, and Skin Renewal Clay Mask

37.    Plaintiff purchased the Legacy Products at Walgreens locations in Peoria and Bloomington Illinois on twelve or more occasions.  Plaintiff's first purchase occurred approximately one year ago, in August 2012.  Plaintiff spent $19.99 on that initial purchase and then purchased a package per month for eleven months thereafter.

38.    Plaintiff put faith into the Products because of the advertising claims that the plant-based stem cells extract would minimize the appearance of fine lines, wrinkles and tired skin; that the Products would accordingly deliver a smooth and radiant complexion; that scientists/researchers found that plant stem cells from rare swiss apple show tremendous ability to stimulate skin stem cells encouraged aging skin to behave like younger skin; that phytoplex24 was in the Product, which knew how to work in synergy to minimize the appearance of wrinkles.  After using all of

the Products for a little over a year, Plaintiff's skin and wrinkles have not reduced in aging and have actually gotten worse.

39. All of the Legacy Eclos Products contain the same purportedly efficacious ingredient ("Malus Domestica Fruit Cell Culture (Plant Stem Cell)"[22]). Point-of-purchase packaging for the Legacy Eclos Products claim they are "Clinically Proven," claim they "Contain High Potency Plant Stem Cells," and use the same "Swiss Phyto Extract" designation that is not understandable to the average consumer.[23] All of the Legacy Eclos Products are or were sold in retail stores as well as online via the Internet, use efficacy statements that are entirely within the Defendants' discretion, and bear the same advertising claims.

40. Defendants' Current Eclos Products come in seven (7) varieties: Cellular Activator Face Serum, Daily HydraPrimer SPF 30, Instant Radiance Facial Scrub, Moisture Therapy Regenerative Cream, Restorative Eye Cream, Skin Prep Cleanser, Skin Renewal Clay Mask. Defendants also market an "Anti-Aging Starter Kit" that contains several varieties of the Current Eclos Products.

41. All of the Current Eclos Products contain the same purportedly efficacious ingredient (Malus Domestica Fruit Cell Culture Extract); claim to be "Clinically Proven," and that "Apple Stems[*sic*] Cells Are Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks."[24] All of the Current Eclos Products use the same "Apple Stem Cell Skin Care[25]" (or "Apple Stem Cell Beauty[26]") designation that is not understandable to

---

[22] *See* Ex. 4.

[23] *See* Ex. 3.

[24] Or that they are "Clinically Proven to Visibly REPAIR and RENEW Skin in Two Weeks," in the case of the latest packaging for Defendants' Daily HydraPrimer SPF 30 product.

[25] *See* Ex. 5.

[26] *See* Ex. 6.

14

the average consumer; are sold in retail stores as well as online via the Internet; use efficacy statements that are entirely within the Defendants' discretion; and bear the same advertising claims.

42.   Plaintiff Buhs first discovered Defendants' unlawful acts described herein in 2013, when he learned that Defendants' Products violate applicable law and that Defendants' labels for the Products were untrue and/or misleading. Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendants' unlawful acts described herein because the violations were known to Defendants, not to him, throughout the class period defined herein.  Plaintiff is not a nutritionist, drug expert, or scientist, but rather a lay consumer who did not have the specialized knowledge that Defendants had.

43.   In purchasing Defendants' Products, Plaintiff Corey Buhs relied upon the various representations Defendants made on the Products labels, including but not limited to "Clinically Proven Results, Advanced Targeted Solutions . . . ," "Clinical Results, 100% of Subjects Experienced Visible Decrease in Wrinkle Depth," "Apple Stems[*sic*] Cells Are Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks," "Contains High Potency Plant Stem Cells … A Swiss Phyto Extract," "Apple Stem Cell Skin Care," and "[ingredients:] Malus Domestica Fruit Cell Culture (Plant Stem Cell)" or  "[ingredients:] Malus Domestica Fruit Cell Culture Extract."   *See* Exs. 1 - 6 & Table A (Misrepresentations Table).

44.   Defendants' Products did not work for Plaintiff as advertised.  But for Defendants' advertising claims as described herein, Plaintiff would not have purchased the Products.

## LEGACY ECLOS AND CURRENT ECLOS PRODUCTS

45.     Generally, Defendants advertise their Legacy Eclos and Current Eclos Products ("Products" or "Eclos Products") through misrepresentations and omissions, including but not limited to, claims that the Products:

- are anti-aging remedies, where "apple stem cells", or "fruit cell culture extracts" are  ingredients in all the challenged Products, purportedly capable of remediating wrinkled skin and other dermatological symptoms of aging;

- are "Proven" or "Clinically Proven" as effective in the improving the appearance of human skin, when such clinical proof, if it even exists, consists of biased studies performed by investigators compensated by Defendants or their parent or subsidiary corporations, or studies that fall short of relevant agency advertising standards, facts which are not disclosed to consumers.

### A.     The Legacy Eclos Products

46.     Through its packaging, Defendant advertises that the Legacy Eclos Products are "Clinically Proven;" contain "High Potency Plant Stem Cells" which are a "Swiss Phyto Extract" and provide "Advanced Targeted Solutions" or "Visible Decrease in Wrinkle Depth." *See* Table A and Exs. 1-3.

47.     In purchasing the Legacy Eclos Products, Plaintiff and consumers reasonably relied upon the various representations Defendants make on the Product's packaging label and their prevalent advertising campaign.

48.     The claimed efficacious ingredients in the Legacy Eclos Products include "Fruit Cell Culture (Plant Stem Cell)." *See* Table A and Ex. 4.

49.     The stem-cell derived ingredients, however, even if they were otherwise effective, are so greatly diluted and degraded by manufacturing

16

processes as to be effectively non-existent in the Product such that the Product is ineffective for its intended uses.

50.     The so-called "fruit cell culture (stem cell)" used in the Legacy Eclos Products provide no cosmetic benefits.  As all of the Legacy Eclos Products are applied externally, most or all of the purported stem-cell derived ingredients, if they even existed at all in the Products, will never permeate the skin.

51.     Defendants know or must be aware that the Products cannot provide the cosmetic benefits for which the Defendants advertise them.

52.     In addition, Defendants' Legacy Eclos Products do not relieve symptoms of aging such as wrinkles, much less provide "Targeted Advanced Targeted Solutions" or "Visible Decrease in Wrinkle Depth."

53.     Defendants' claims are also misleading and false because the Legacy Eclos Products have not been "Clinically Proven" nor have Defendants supported their claims of "Clinically Proven Results, Advanced Targeted Solutions" or "Visible Decrease in Wrinkle Depth" by credible scientific evidence suitable to meet relevant, federal agency advertising standards.  Also, Defendants or other companies manufacturing similar products sponsored the clinical studies Defendants rely on to make their "Clinically Proven" claims, a fact not disclosed to consumers.

54.     These "Clinically Proven" claims are further false and deceptive because a reasonable consumer is likely to believe the Products are used, endorsed, or recommended by doctors (i.e., "clinicians") practicing medicine in "clinical" settings, which promotes consumer confusion.

55.     The Federal Trade Commission ("FTC") enforces OTC cosmetic advertising and applies the same standards as any consumer product:  a "reasonable consumer" standard.  The FTC requires OTC cosmetic advertising to

17

be truthful, non-deceptive, fair, and for manufacturers to provide evidence that backs up their claims.

56.    The Legacy Eclos Products are sold as ointments or salves with prices for each package ranging from $19.99 to $34.99.  Hence, Defendants' unfair and deceptive practices have enriched them by millions of dollars, at the expense of tens of thousands of Americans.

57.    Absent the misrepresentations and omissions described herein, which are material to an average consumer, Plaintiff and other consumers would not have purchased the Legacy Eclos Products.

58.    In purchasing Products that were falsely or deceptively advertised, Plaintiff suffered injury in fact in the form of the lost purchase price of the Products.

59.    Plaintiff seeks justice for himself and similarly-situated consumers of the Legacy Eclos Products, by means of this action to enjoin the ongoing deceptive practices described herein.

60.    Further, Plaintiff and the Class purchased Defendants' Products instead of competing products based on the false statements and misrepresentations described herein, suffering economic injuries.

**B.    The Current Eclos Products**

61.    Through its packaging, Defendant advertises that the Current Eclos Products are "Clinically Proven;" that "Apple Stems[*sic*] Cells Are Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks," that the Current Eclos Products provide "Apple Stem Cell Skin Care" and contain "Malus Domestica Fruit Cell Culture Extract."  *See* Table A.

62.    In purchasing the Current Eclos Products, Plaintiff and consumers reasonably relied upon the various representations Defendant makes on the Product's packaging label and its prevalent advertising campaign, which includes

website advertising claiming to deliver, among other things, "[h]igh-tech, anti-aging skin care with Apple Stem Cell Technology[27]."

63.    The claimed ingredients in the Current Eclos Products include "Fruit Cell Culture Extract." *See* Table A.

64.    However, the stem-cell derived ingredients, even if they were otherwise effective, are so greatly diluted and degraded by manufacturing processes as to be effectively non-existent in the Product such that the Product is ineffective for its intended uses.

65.    The so-called "fruit cell culture extract" ingredient used in the Current Eclos Products provides no health benefits.  As all of the Current Eclos Products are applied externally, most or all of the purported stem-cell derived ingredients, even if they were not degraded, will never permeate the skin due to the exceptionally small amount of such ingredients actually present in the Products.

66.    Defendants know the Current Eclos Products do not provide the cosmetic benefits for which Defendants advertise them.  Defendants' Current Eclos Products do not relieve symptoms of aging such as wrinkles.

67.    Defendants' claims are also misleading and false because the Current Eclos Products have not been "Clinically Proven" sufficient to FTC advertising standards that apply to these claims, nor have Defendants supported their claims that "Apple Stems[*sic*] Cells … Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks," by credible scientific evidence suitable to meet relevant, federal agency advertising standards. Also, Defendants or other companies manufacturing similar products sponsored the clinical studies Defendants rely on to make their "Clinically Proven" claims, a fact not disclosed to consumers.

---

[27] *See* http://www.freemanbeauty.com/eclos.

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

### C.    Allegations as to all Products

68.    The Eclos Products' "Clinically Proven" claims are further false and deceptive because a reasonable consumer is likely to believe the Products are used, endorsed, or recommended by doctors (i.e., "clinicians") practicing medicine in "clinical" settings.

69.    The Products are sold with prices ranging from $12.99 to $24.99. Hence, Defendants' unfair and deceptive practices have enriched them by millions of dollars, at the expense of tens of thousands of consumers.

70.    Absent the misrepresentations and omissions described herein, which are material to an average consumer, Plaintiff and other consumers would not have purchased the Eclos Products.

71.    In purchasing Defendants' Products that were falsely or deceptively advertised, Plaintiff suffered injury in fact in the form of the Products' lost purchase price.

72.    Plaintiff seeks justice for himself and similarly-situated consumers of the Products, by means of this action to enjoin the ongoing deceptive practices described herein, and for retrospective injunctive relief as well.

73.    Further, Plaintiff and the Class purchased Defendants' Products instead of competing products based on the false statements and misrepresentations described herein, suffering economic injuries.

74.    Defendants' advertising of the Products are and have been the subject of an extensive, comprehensive, and uniform marketing campaign in various media throughout California, Illinois, and the rest of the United States, including the Internet.

75.    Defendants advertise, distribute and sell the Products in the aisles in major retail stores throughout California, Illinois, and the United States.  All of the Products' packaging is uniform, no matter in which State it appears.

20

76.     Defendants primarily advertise and promote the Products through the labeling claims and images on the front of the Products' packages.   Label descriptions on the Products' packaging, taken as a whole and in context, clarify the purported uses, benefits and characteristics of the Products.   As would any reasonable consumer, Plaintiff and the Class relied on the Products' packaging claims, taken as a whole and in context, in purchasing the Products.

77.     Defendants' marketing and promotion of the Products was supported by false and misleading claims containing material omissions and misrepresentations, which Plaintiff and Class members relied upon in making their decision to purchase the Products.

78.     Defendants also do not explain terms such as "anti-aging," "stem cell," "fruit cell culture," "fruit cell culture extract," "Swiss Phyto Extract," "Malus Domestica," or "High-Tech Apple Stem Cell Technology" in a language understandable to an average consumer.

79.     California Health and Safety Code, Division 104, Part 5, contains the Sherman Food, Drug, and Cosmetic Law ("Sherman Law," located at Cal. Health & Safety Code §§ 109875-111915).   The Sherman Law is explicitly authorized by the FDCA.   21 U.S.C. § 343-1.

80.     The Sherman Law defines a "drug" as "any article other than food, <u>that is used or intended to affect the structure or any function of the body of human beings</u> or any other animal [*emphasis added*]."   Cal. Health & Safety Code § 109925(c).

81.     Each of the Products are labeled as containing   or  "High Potency Plant Stem Cells" or "Apple Stems [sic] Cells" and "Apple Stem Cell Skin Care" or "Apple Stem Cell Beauty", which are "Anti-Aging" "Clinically Proven," to cause "Visible Decrease in Wrinkle Depth," or "Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks" or "Visibly REPAIR &

21

RENEW Skin," which makes the Products unapproved new drugs, which are accordingly misbranded under the California Sherman Law.  Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111.

82.   The Products are each also a "Cosmetic" under Section 109900 of the Sherman Law.  *See also* 21 U.S.C. § 321(i).  Accordingly, the Products are subject to the Cosmetics portions of the FDCA and Sherman Law, in addition to being subject to the drug and OTC regulations described herein.

83.   Defendants, however, went beyond cosmetics advertising with the Products, by claiming the Products do not just cleanse or beautify but work a chemical effect on human skin, changing its appearance, texture and depth or wrinkles.

84.   Defendants' marketing and promotion of the Products was supported by false and misleading claims containing material omissions and misrepresentations.

85.   When purchasing the Products, Plaintiff and the class were seeking products that would provide the benefits, and possessed the efficacy and characteristics, as Defendants marketed, promised, represented and warranted.

86.   Plaintiff and the Class purchased the Products believing they had the qualities they sought, based on the Products' false and deceptive labeling and marketing, but the Products were actually unacceptable to them as they did not possess the benefits, efficacy, and characteristics advertised.

87.   At all times relevant herein, Defendants had a duty to disclose additional and/or complete, accurate information to purchasing consumers, to correct all misunderstandings its omissions and misrepresentations created in the minds of those consumers.

88.   Moreover, like all reasonable consumers and members of the Class, Plaintiff and the Class consider a label's compliance with federal law a material

factor in their purchasing decisions.  Plaintiff and the Class are generally aware the federal government carefully regulates cosmetics and therefore have come to trust that information conveyed on packaged cosmetic labels is truthful, accurate, complete, and fully in accordance and compliance with the law.  As a result, Plaintiff and the Class trust they can compare competing products on the basis of their labeling claims, to make a purchasing decision.

89.     Like all reasonable consumers and members of the Class, Plaintiff and the Class would not purchase a cosmetic they knew was misbranded under federal law, *see* 21 U.S.C. § 352, which the federal government prohibits selling, *id.* § 331, and which carries with its sale criminal penalties, *id.* § 333.  *See also* Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111.  Plaintiff and the Class could not trust that the label of a product misbranded under federal law is truthful, accurate and complete.  In fact, the Defendants were promoting the Products in violation of the FDCA, making the Products misbranded under California's Sherman Law.

90.     Similarly, like all reasonable consumers and Class members, Plaintiff and the Class would not purchase a cosmetic they knew was an illegally marketed new drug for which the FDA has not determined its safety and efficacy.

91.     In light of the foregoing, reasonable consumers, including Plaintiff and other Class members, were and are likely to be deceived by Defendants' advertising and marketing practices as detailed herein.

92.     Plaintiff and the Class will be exposed to the Products' false, deceptive, and unlawful labeling claims in the future when they visit a retail store for anti-aging remedies and cosmetic products unless Defendants agree, or are enjoined, to change the Products' labeling in response to Plaintiff's claims as set forth herein and in Plaintiff's notice letter.  Moreover, Plaintiff and the Class seek retroactive injunctive relief, to obtain restitutionary disgorgement or restitution of

23

all monies that may have been obtained by Defendants through unfair, unlawful, or fraudulent business acts or practices.

93.     Instead of receiving Products that had the benefits, advantages, endorsements, proof, and characteristics as advertised, Plaintiff and other Class members received a product worth much less, or which was worthless, since the Products do not work; cause no effect or effects reverse of that advertised; and did not possess the characteristics, benefits, endorsements, and proof of efficacy, as advertised by Defendants.

94.     Plaintiff and the Class lost money as a result of Defendants' deception in that Plaintiff and the Class did not receive what they had paid for.

95.     Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Products over the class period.

## CLASS ACTION ALLEGATIONS

96.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of Illinois state laws, California state laws, and similar laws in other states:

**Multi-State Class Action**

All persons in the United States who, within the applicable statute of limitations under their respective state's consumer fraud act, purchased Defendants' Legacy Eclos Products or Current Eclos Products, including all iterations/variations of the aforementioned

24

products ("the Products"), from August 13, 2003 to the present ("Class Period") for personal or household use.[28]

Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased the Products for the purpose of resale.

41.   *In the alternative*, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois and California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Classes:

**Illinois Class Action**
All Illinois residents who, within the applicable statute of limitations, purchased the Products for personal or household use and not for resale;

---

[28]   While discovery may alter the following, Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

*and*

**California Class Action**
All California residents who, within the applicable
statute of limitations, purchased the Products, for
personal or household use and not for resale.

Excluded from the Illinois and California Classes are
Defendants, their parents, subsidiaries, affiliates, officers and
directors, and those who purchased the Products for the
purpose of resale.

97.     The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the tens of thousands of persons in the States of Illinois and California, and in the hundreds of thousands of persons in the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation, discovery or Class definition.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

98.     Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to their Products appropriate with respect to the Class as a whole.  Retrospective injunctive relief would seek a recall of the Products' false, deceptive and unlawful labeling and benefit the Class equally and as a whole.  Prospective injunctive relief would ensure that Class members are only exposed to lawful, truthful and non-misleading advertising of the Products in the future, which will also benefit each member of the Class in equal but indivisible measure.  In particular, Defendants have misrepresented or failed to disclose the true nature of the Products being marketed and distributed, as

26

detailed herein, through misrepresentations and omissions on the labeling, by which Defendants acted and refused to act on grounds generally applicable to the Class as a whole.

99.     There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following:

     a.   Whether the claims discussed above are true, misleading, or reasonably likely to deceive an average consumer;

     b.   Whether Defendants' alleged conduct violates public policy;

     c.   Whether the alleged conduct constitutes violations of the laws asserted herein;

     d.   Whether Defendants engaged in false or misleading advertising;

     e.   Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief (retrospective and prospective); and

     f.   The method of calculation and amount of restitution or damages to the Class.

100.   Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by the Defendants' common course of conduct because they all relied on Defendants' representations concerning their Products and purchased the Products based on those representations.

101.   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for homeopathic drugs, in particular.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

102.   Plaintiff and the members of the Class suffered and will continue to suffer harm as a result of the Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.   Individual joinder of all members of the Class is impracticable.   Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of Class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

103.   Adjudication of individual Class members' claims with respect to the Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

## FIRST CAUSE OF ACTION

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

***California Civil Code §§ 1750, et seq.***

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

104.   Plaintiff repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

28

105.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act").   Plaintiff and Class members are consumers as defined by California Civil Code § 1761(d). Defendants' Legacy Eclos Products and Current Eclos Products ("Eclos Products" or "Products") are goods within the meaning of the Act.   Defendants' advertising and marketing decisions emanated from Los Angeles County, California and were distributed through the United States.

106.   Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class, which were intended to result in, and did result in, the sale of the Eclos Products.

- Representing that [Eclos Products have]…characteristics, ingredients, uses, benefits or quantities which [Eclos Products] do not have. (Civ. Code, § 1770, subd. (a) (5).)
- Representing that [Eclos Products] are of a particular standard, quality or grade… if they are of another.  (Civ. Code, § 1770, subd. (a) (7).)
- Advertising [Eclos Products] …with intent not to sell them as advertised.  (Civ. Code, § 1770, subd. (a) (9).)
- Representing that [Eclos Products] have been supplied in accordance with a previous representation when it has not.  (Civ. Code, § 1770, subd. (a) (16).)

107.   Defendants violated the Act by representing through advertising of Eclos Products as described above, when they knew, or should have known, the representations and advertisements were false or misleading.

108.   Plaintiff and members of the Class reasonably relied upon the Defendants' representations as to the quality and attributes of the Eclos Products.

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

109.  Plaintiff and other members of the Class were deceived by Defendants' representations about the quality and attributes of the Eclos Products, including but not limited to the purported benefits of the Eclos Products, taken as a whole, that the Eclos Products are effective in relieving various symptoms and ailments.  *See also* Exs. 1 - 6.  Plaintiff and other Class members would not have purchased the Eclos Products had they known the Defendants' claims were untrue, and had they known the true nature of the Eclos Products.

110.  Pursuant to section 1782 *et seq*. of the CLRA, Plaintiff notified the Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA as to the  Eclos Products, and demanded the Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act.  Defendants' wrongful business practices regarding the Eclos Products constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act because Defendants are still representing that Eclos Products have characteristics, uses, benefits, endorsements, proof and abilities which are false and misleading, and have injured Plaintiff and the Class.  A copy of Plaintiff's letter is attached as Exhibit 7 hereto.

111.  Pursuant to California Civil Code § 1780(a), Plaintiff and the Class seek an order of this Court enjoining the Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, and awarding Plaintiff and the Class damages and punitive damages.

112.  Pursuant to California Civil Code § 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of the Defendants with respect to the Eclos Products.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

*California Business and Professions Code §§ 17200, et seq.*

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

113.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

114.   Plaintiff has standing to pursue this claim as he suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance upon Defendants' marketing claims.  Plaintiff used the Products as directed, but the Products did not work as advertised, nor provided any of the promised benefits or characteristics.

115.   California's Unfair Competition Law, Business and Professions Code § 17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising in violation of the UCL.  Defendants' advertising and marketing decisions emanated from Los Angeles County, California, from which the advertising and marketing claims were distributed through the United States.

116.   The UCL also prohibits any "unlawful… business act or practice."  Defendants violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and by violating among others, California Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, California Health and Safety Code §§ 109875, *et seq*. ("Sherman Law"), including but not limited to Cal. Health & Safety Code §§ 110100, 110290, 110390; Cal. Bus. & Prof. Code §§ 12601, *et seq*. ("Fair Packaging and Labeling Act"), California Commercial Code § 2313(1), and the common law; *see also* Cal. Health & Safety Code § 110105 (incorporating all

FDCA laws and implementing regulations as the laws of this State).  Such conduct is ongoing and continues to this date.  *See also* Exs. 1 - 6.

117.   Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

118.   California Business and Professions Code § 17200 also prohibits any "unfair… business act or practice."

119.   Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Such conduct is ongoing and continues to this date.

120.   Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California, Illinois, and other states resulting in harm to consumers.  Plaintiff asserts violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

121.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

122.   The UCL also prohibits any "fraudulent business act or practice."

123.   Defendants' claims, nondisclosures (i.e., omissions), and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of the UCL.  Such conduct is ongoing and continues to this date.

124.   Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other members of the Class.  Plaintiff has suffered injury in fact

as a result of Defendants' unfair conduct in the form of monies lost as a result of Defendants' conduct as complained of herein.

125.  Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff to injunctive relief against Defendants, both retrospective and prospective, as set forth in the Prayer for Relief.

126.  Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign, and make labeling changes.  Plaintiff also seeks an order for retrospective injunctive relief to correct the consequences of Defendants' acts, *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 656 (1996), such as creation of an impound fund and a recall of the unlawful, false and deceptively labeled Products.  *See also People v. Toomey*, 157 Cal.App.3d 1, 21 (1984). Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Defendants' Products, a form of retrospective injunctive relief, and a remedy specifically provided by statute, for monies that may have been acquired through Defendants' acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

*California Business and Professions Code §§ 17500, et seq.*

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

127.  Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

128.  Plaintiff has standing to pursue this claim as he suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased Eclos Products in reliance upon

33

Defendants' marketing claims. Plaintiff and putative Class members used the purchased Eclos Products as directed, but the Products did not work as advertised, nor provided any of the promised benefits or uses or characteristics.

129. Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code §§ 17500, *et seq.* because Defendants advertised Eclos Products in a manner they know is untrue or misleading, or that reasonably should have been known to Defendants to be untrue or misleading.

130. Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

131. Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining the Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint, and for a corrective advertising campaign.

132. Plaintiff and the Class also seek an order for the disgorgement and restitution of all monies that Defendants' may have acquired through acts of unlawful, unfair, deceptive and/or fraudulent business competition. Plaintiff also seeks an order for retrospective injunctive relief to correct the consequences of Defendants' acts, *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 656 (1996), such as creation of an impound fund, and a recall of the unlawful, false and deceptively labeled Products. *See also People v. Toomey*, 157 Cal.App.3d 1, 21 (1984).

# FOURTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (On Behalf of Plaintiffs and all Class Members, as Against All Defendants)

133.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

134.   On the Products' labels and through their marketing campaign as described above, Defendants made affirmations of fact or promises, or description of goods, which formed "part of the basis of the bargain" at the time of purchase. *See* Exs. 1-6, attached hereto.

135.   These warranties, reflected by Defendants' quoted language throughout this complaint, and as provided by state common law or statute, were breached because the Products did not live up to their warranties, and that breach caused injury in the form of the lost purchase price for the Products. *See*, *e.g.*, Cal. Com. Code § 2313(1); *see also Zwart v. Hewlett-Packard Co.*, 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create warranties).

136.   As a result of Defendants' breach of their warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Products they purchased.

# FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of Plaintiff and the Class, as Against All Defendants)

137.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

138.   Defendants, through their acts and omissions as set forth herein, in their sale, marketing and promotion of purchased Eclos Products, made affirmations of fact or promises to Plaintiff and Class members that the Eclos Products possess certain uses, benefits, and characteristics, as discussed herein.

35

139.   Plaintiff and the Class bought the Eclos Products, which are manufactured, advertised and sold by Defendants.

140.   Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable for their intended use.

141.   However, Defendants breached that warranty implied in the sale of goods in that the Eclos Products did not provide the claimed uses, benefits, and characteristics, as set forth in detail herein.

142.   As a result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

143.   Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,

### 15 U.S.C. §§ 2301, *et. seq*.

### (On Behalf of Plaintiff and the Class, as Against All Defendants)

144.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

145.   Plaintiffs bring their claim individually and on behalf of the members of the Class.

146.   Plaintiff and the Class assert state law warranty claims arising under the laws of the States of California and Illinois, as allowed under Sections 2301(7) and 2310(d) of the MMWA.

147.   In addition, Defendants' Products are consumer products as defined in 15 U.S.C. § 2301(1).

148.   Plaintiff and the other Class members are consumers as defined in 15 U.S.C. § 2301(3).

149.   Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

150.   In connection with the sale of the Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the Products offer effective relief from various ailments and symptoms (as listed in Table A) and possessed certain attributes and qualities, as described herein, when in fact, these Products do not provide relief for any of these ailments or symptoms.

151.   Defendants' warranties include, *inter alia*,
- Legacy Eclos and Current Eclos Products
  - Clinically Proven;
  - "Anti-Aging."
- Legacy Eclos Products
  - Contains High Potency Plant Stem Cells;
  - "100% of Subjects Experienced Visible Decrease in Wrinkle Depth";
  - Advanced Targeted Solutions.
- Current Eclos Products
  - Apple Stem Cell Skin Care;
  - "Apple Stems[*sic*] Cells Are Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks," *or*, "Clinically Proven to Visibly Repair & Renew Skin in Two Weeks";
  - Website advertising: High-tech, anti-aging skin care with Apple Stem Cell Technology.

152.   By breaching the express written warranties as described herein, Defendants violated the statutory rights of Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and other Class members.

37

153.   Plaintiff notified the Defendants in writing of their claims and that the Plaintiff is acting on behalf of the Class.  *See* Ex. 7, CLRA Letter.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

### *815 Illinois Compiled Statutes 502/2, et seq.*

### (On Behalf of Plaintiff and All Class Members, as Against All Defendants)

154.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein

155.   In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/2, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in trade or commerce, including the sale of the Eclos Products by the Defendants.

156.   Plaintiff and the Class were injured by Defendants' deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

157.   Defendants do business in Illinois, sell and distribute the Eclos Products in Illinois, and engage in deceptive acts and practices in connection with the sale of the Products in Illinois.

158.   The Defendants created and caused the anti-aging wrinkle repair claims to be published to consumers in connection with the sale of the Products.

159.   The Defendants displayed the anti-aging and wrinkle repair claims at the point of sale to induce and close the sale with Plaintiff and Class members.

160.   The Eclos Products that Plaintiff and the Class purchased is a "consumer item" as that term is defined under the Act.

161.   Defendants misrepresent and deceptively conceal, suppress and/or omit material information known to Defendants as set forth above concerning Eclos Products which has caused damage and injury to Plaintiff and the Class.

38

162.   Defendants' deceptive acts are occurring in a course of conduct involving trade and commerce in Illinois.

163.   Defendants' deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

164.   Defendants intended Plaintiff and all Class members to rely on their deceptive acts.

165.   Defendants' conduct constituted a consumer fraud under the Illinois Consumer Fraud Act.

### PRAYER FOR RELIEF

166.   Wherefore, Plaintiff, on behalf of himself, all others similarly situated and the general public, prays for judgment against the Defendants as to each and every cause of action, including:

A.   An order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of Class notice;

B.   An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein and injunctive relief to remedy Defendants' past conduct, including a recall and corrective advertising campaign;

C.   An order awarding restitution of the purchase price of the Legacy Eclos Products and the Current Eclos Products ("Products") to Plaintiff and the proposed Class members; and restitutionary disgorgement of Defendants' revenues from all the Products purchased by Plaintiffs and the proposed Class members under the UCL and FAL, as well as under the Illinois Consumer Fraud Act

*Buhs v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

and under applicable multi-state consumer protection statutes as set forth in the Complaint;

D.    An order awarding damages under Plaintiff and the Class' Illinois Consumer Fraud Act, applicable multi-state consumer protection statutes set forth in the Complaint, and for the warranty claims regarding the Products;

E.    An order awarding attorneys' fees and costs to Plaintiff and the Class;

F.    An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:        August 14, 2013        */s/ Ronald A. Marron*

By: Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
SKYE RESENDES
ALEXIS WOOD
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

40

I, Corey Buhs, declare as follows:

1.     I am the Plaintiff in this action.  I make this affidavit as required by California Civil Code Section 1780(d).

2.     The Complaint in this action is filed in a proper place for the trial of this action because Defendant is doing business in this county.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: Aug. 14, 2013

_____
Corey Buhs

AFFIDAVIT OF VENUE

**Table of Exhibits**

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit 1 | Eclos Legacy Products Packaging (Type A) | 1 – 3 |
| Exhibit 2 | Eclos Legacy Products Packaging (Type B) | 4 |
| Exhibit 3 | Eclos Legacy Product Packaging (Type B): Travel/Starter Kit | 5 |
| Exhibit 4 | Example of Eclos Legacy Products Ingredients Panel: Moisture Therapy Regenerative Cream | 6 |
| Exhibit 5 | Eclos Current Product Packaging | 7 |
| Exhibit 6 | Current Eclos Product, Recent Re-Design of SPF Daily Hydra Primer SPF 30 | 8 |
| Exhibit 7 | Plaintiff's CLRA Letter | 9 – 12 |

# EXHIBIT 1

Eclos Legacy Products Packaging (Type A)







# <u>EXHIBIT 2</u>

Eclos Legacy Products Packaging (Type B)



**EXHIBIT 3**

Eclos Legacy Product Packaging (Type B):

Travel/Starter Kit



# EXHIBIT 4

Example of Eclos Legacy Products Ingredients Panel: Moisture Therapy
Regenerative Cream

*Black box added to highlight "plant stem cell" claim.*

## Moisture Therapy
## Regenerative Cream

The latest in Plant Stem Cell technology is believed to be the holy grail of anti-aging skin care. This remarkable facial cream containing high potency Plant Stem Cells is formulated specifically to help protect your own skin stem cells. As a result, it promotes the self-renewal capacity of the skin and helps **slow the signs of aging**. By revitalizing your skin stem cells, it **helps tighten sagging skin** and postpones wrinkling. The added benefits of Chamomile and Cucumber found in the powerhouse complex PhytoPlex24™ provides the **ultimate in soothing** and defensive properties for the skin.

**Use:** May be used alone or for optimal results apply over Eclos™ Cellular Activator Face Serum day or night.

**Ingredients:** Purified Water (Aqua), Glycerin, Olea Europaea Fruit Oil (Olive Oil), Dimethicone, Cyclopentasiloxane, Butyrospermum Parkii (Shea Butter), Ethylhexyl Palmitate, Glyceryl Stearate, Polysilicone-11, Palmitoyl Glycine, Peg-100 Stearate, Malus Domestica Fruit Cell Culture (Plant Stem Cell), Xanthan Gum/Glycerin/Lecithin/ Phenoxyethanol/Water (Aqua), Tocopheryl Acetate (Vitamin E), Aesculus Hippocastanum (Horse Chestnut) Seed Extract, Ginkgo Biloba Leaf Extract, Centella Asiatica (Gotu Kola) Extract, Camellia Oleifera (Green Tea) Leaf Extract, Curcuma Zeodaria (Turmeric) Leaf Extract, Rosmarinus Officinalis (Rosemary) Leaf Extract, Cucumis Sativus (Cucumber) Fruit Extract, Chamomilla Recutita (Matricaria) Flower Extract, Symphytum Officinale (Comfrey) Leaf Extract, Salix Alba (Willow) Bark Extract, Amyris Balsamifera Bark (West Indian Rosewood) Oil, Aniba Rosaeodora (Rosewood) Wood Oil, Cananga Odorata Flower (Ylang-Ylang) Oil, Cymbopogon Martini (Palmarosa) Oil, Elettaria Cardamomum (Cardamon) Seed Oil, Pelargonium Graveolens (Geranium) Flower Oil, Nylon-12, Silica, PEG-10 Dimethicone, Polysorbate 40,Isohexadecane, Ammonium, Polyacryloyldimethyl Taurate, Polyacrylamide, C13-14 Isoparaffin, Laureth-7, Sorbitan Stearate, Carbomer, Magnesium Aluminum Silicate, Sodium Hydroxide, Disodium EDTA, Phenoxyethanol, Caprylyl Glycol, Sorbic Acid

# EXHIBIT 5

## Eclos Current Product Packaging



# EXHIBIT 6

Current Eclos Product, Recent Re-Design of SPF Daily Hydra Primer SPF 30.



# EXHIBIT 7

Law Offices of

# Ronald A. Marron

A Professional Law Corporation

3636 Fourth Avenue, Ste 202                                            Tel: 619.696.9009
San Diego, CA 92103                                                    Fax: 619.564.6665

August 9, 2013

**<u>Via: Certified Mail, (receipt acknowledgment with signature requested)</u>**

pH Beauty Labs, Inc.
Attn: LEGAL DEPARTMENT
1964 Westwood Blvd., Suite 300
Los Angeles CA 90025

*RE:     NOTICE:  Violations of the California Consumer Legal Remedies Act and Duty to
         Preserve Evidence*

Dear Sir or Madam,

    **PLEASE TAKE NOTICE** that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,* (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **pH Beauty Labs, Inc.** ("YOU" and "YOUR") of violations of the Act and of our demand that YOU remedy such violations within thirty (30) days from your receipt of this letter.

    This firm represents Corey Buhs.  Mr. Buhs purchased the Eclos Travel/Starter Kit at Walgreens drug stores, in Bloomington and Peoria, Illinois, in 2012 and 2013.  The Eclos Travel/Starter Kit contained six (6) different Eclos Products manufactured for and marketed by YOU:  (1) Facial Cleanser Skin Prep, (2) Cellular Activator Face Serum, (3) Moisture Therapy Regenerative Cream, (4) Restorative Eye Cream, (5) Instant Radiance Facial Scrub, and (6) Skin Renewal Clay Mask.  Mr. Buhs was exposed to and saw YOUR claims about the product, purchased the product in reliance on those claims, and suffered injury in fact as a result of YOUR false and misleading advertising.

    Through YOUR wholly-owned subsidiary, Freeman Beauty Labs LLC ("Freeman"), YOU currently market a  line of Eclos anti-aging products, six of which were purchased by Mr. Buhs in the Eclos Travel/Starter Kit.  The Eclos anti-aging products are  purported to contain stem cells, or extracts of stem cells derived from the domestic apple (*Malus domestica*), supposedly from the Uttwiler Spätlauber cultivar thereof.  YOU currently market at least eight Eclos products ("Current Eclos Products"):

1.  Anti-Aging Starter Kit

2.  Cellular Activator Face Serum

3.  Daily HydraPrimer SPF 30

4.  Instant Radiance Facial Scrub

5.  Moisture Therapy Regenerative Cream

**EXHIBIT 7 PAGE 9**

    6.   Restorative Eye Cream

    7.   Skin Prep Cleanser

    8.   Skin Renewal Clay Mask

All of the eight (8) above-listed Current Eclos Products are sold in packages claiming they contain "Plant Stem Cell Skin Care" by means of prominent bold display type on the external point-of-sale packaging; the front of the Current Eclos Products packages visible in stores also displays large bold type that states that the products are "Anti-Aging." Upon opening a Current Eclos Product package, the consumer gains access to a product container, which similarly indicates in large bold print that the contents are "Anti-Aging."

YOU also marketed, and continue to market, the following products ("Legacy Eclos Products"), six of which were purchased by Mr. Buhs in the Eclos Travel/Starter Kit as set forth above.

    1.   Facial Cleanser Skin Prep

    2.   Cellular Activator Face Serum

    3.   Moisture Therapy Regenerative Cream

    4.   Restorative Eye Cream

    5.   Instant Radiance Facial Scrub

    6.   Skin Renewal Clay Mask

    7.   Travel/Starter Kit (*contains products 1-6*)

    8.   Super Concentrated Night Booster Fluid

    9.   Intensive Skin Restoration Body Cream

    10. Intense Moisture Hydrating Mask

    11. Dark Circle & Puffy Eye Cream

    12. Wrinkled Forehead & Crow's Feet Cream

    13. Age Spot Treatment

All of the thirteen (13) above-listed Legacy Eclos Products were, and continue to be, sold in packages claiming they contain "High Potency Plant Stem Cells" by means of prominent bold display type on the external point-of-sale packaging, and the front of the package visible in stores reads "Anti-Aging Skin Care." Upon opening a Legacy Eclos Product package, the consumer gains access to a product container, which indicates in large bold print that the contents are "Anti-Aging."

YOU falsely market YOUR products by putting false and misleading claims on the labels.

For example, YOU claim that each Legacy Eclos Product is "Anti-Aging," and "Contains High Potency Plant Stem Cells," promising "Clinical Results" where "100% of Subjects Experienced Visible Decrease in Wrinkle Depth." The purported stem cell-derived ingredient in the Legacy Eclos Products is *"Malus Domestica Fruit Cell Culture (Plant Stem Cell)."*

In fact, the Legacy Eclos Products have no efficacy beyond that attributable to ingredients other than *"Fruit Cell Culture (Plant Stem Cell)."* Further, even if YOUR product contained *"Fruit Cell Culture (Plant Stem Cell)"* those ingredients are ineffective and/or so greatly diluted as to be non-existent in the product, such that the product is ineffective for its intended uses. The

**EXHIBIT 7 PAGE 10**

trace amounts of *"Fruit Cell Culture (Plant Stem Cell)"* allegedly contained in YOUR Legacy Eclos Products do not aid in the suggested remedial efficacy.

Similarly, YOU claim that the Current Eclos Products are "Anti-Aging," "Apple Stem Cell Skin Care" and "Clinically Proven to Reduce the Appearance of Wrinkles and Improve the Texture of Skin in Two Weeks." The purported stem cell-derived ingredient in the Freeman-Eclos Products is *"Malus Domestica Fruit Cell Culture Extract."*

In fact, the Current Eclos Products have no efficacy beyond that attributable to ingredients other than *"Fruit Cell Culture Extract"*. Further, even if YOUR product contained *"Fruit Cell Culture Extract,"* those ingredients are ineffective and/or so greatly diluted as to be non-existent in the product, such that the product is ineffective for its intended uses. The trace amounts of *"Fruit Cell Culture Extract"* allegedly contained in YOUR products do not aid in the suggested remedial efficacy.

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding YOUR products or services.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR products under the representation that they provide anti-aging benefits, when in fact they do not.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations. Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the class action complaint on behalf of our client, Corey Buhs, and all other similarly-situated U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation. See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990). This firm anticipates that all e-mails, letters, reports, internal corporate instant messages,

**EXHIBIT 7 PAGE 11**

CLRA Demand Letter                                                                        Page 4

and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process. You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

     In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is a **senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000)… [emphasis added]".

     I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

               Sincerely,
               THE LAW OFFICES OF RONALD A. MARRON APLC

               /s/ Ronald A. Marron
               Ronald A. Marron
               Attorney for Corey Buhs, and all others similarly situated

**EXHIBIT 7 PAGE 12**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____S. James Otero_____ and the assigned Magistrate Judge is _____Michael R. Wilner_____ .

The case number on all documents filed with the Court should read as follows:

## CV13-05993 SJO (MWRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 15, 2013_____
Date

By _____Lori Wagers_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

Name & Address:
Law Offices of Ronald A. Marron, APLC
Ronald A. Marron (SBN 175650)
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| COREY BUHS, on behalf of himself, all others similarly situated and the general public, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV13-05993 SJO (MRWx) |
| v. | |
| PH BEAUTY LABS, INC., a California corporation, individually and d/b/a Freeman Beauty Labs; FREEMAN BEAUTY LABS, a California corporation | |
| DEFENDANT(S). | **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Ronald A. Marron_____, whose address is _651 Arroyo Drive, San Diego, CA 92103_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

**LORI WAGERS**

Dated: ____8-15-13_____          By: _____

Deputy Clerk

1146

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

### I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ )

COREY BUHS, on behalf of himself, all others similarly situated and the general public

### DEFENDANTS ( Check box if you are representing yourself ☐ )

pH BEAUTY LABS, INC., a California corporation, individually and d/b/a Freeman Beauty Labs; FREEMAN BEAUTY LABS, a California corporation

### (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Law Offices of Ronald A. Marron, APLC
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006

### (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

### II. BASIS OF JURISDICTION (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

### V. REQUESTED IN COMPLAINT: JURY DEMAND: ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** over 5,000,000.00

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of CLRA, UCL, FAL, Breaches of Express Warranties, Implied Merchantability, and Violations of Magnuson-Warranty Act, and ICFR

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

### FOR OFFICE USE ONLY: Case Number

CV13-05993 SJO (MRWx)

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)

☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Ronald P M_____   DATE: 08/14/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |